JEAN E. WILLIAMS,
Acting Assistant Attorney General
Environment & Natural Resources Division
SETH M. BARSKY, Section Chief
S. JAY GOVINDAN, Assistant Section Chief
NICOLE M. SMITH, Trial Attorney (CA Bar No. 303629)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
150 M St. NE
Washington, D.C. 20002
Tel | (202) 305-0368; Fax | (202) 305-0275
E-mail: Nicole.M.Smith@usdoj.gov

*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | ) CASE NO.  9:21-cv-00005-DLC |
| | ) |
| *Plaintiff*, | ) **Brief in Support of Federal** |
| | ) **Defendants' Motion to Dismiss** |
| | ) **Plaintiff's Amended Complaint (ECF** |
| v. | ) **No. 3) or in the Alternative to Stay** |
| | ) **the Case.** |
| LEANNE MARTEN, et al., | ) |
| | ) |
| *Defendants*. | ) |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..................................................................................................1

LEGAL BACKGROUND ......................................................................................1

I.   The Endangered Species Act ............................................................................1

FACTUAL BACKGROUND..................................................................................2

1.   Revised Forest Plan, Travel Plans and Plaintiff's 60-day notice of intent to
     sue. ..................................................................................................................2

2.   Plaintiff's complaints.......................................................................................5

STANDARD OF REVIEW .....................................................................................6

ARGUMENT ..........................................................................................................7

1.   The Court lacks jurisdiction over Plaintiff's claims because Plaintiff has
     failed to provide the requisite 60-day notice of intent to sue under the ESA. .7

2.   Plaintiff's challenges to the sufficiency of the consultations are
     not ripe....................................................................................................11

3.   In the alternative, this case should be stayed until the ongoing consultation is
     completed in July or the ROD issues. ...........................................................17

CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGE</u>

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967)......................................................................... 12, 13

*Am. Rivers v. Nat'l Marine Fisheries Serv.,*
    126 F.3d 1118 (9th Cir. 1997) ..............................................................10

*Bassiri v. Xerox Corp.,*
    292 F. Supp. 2d 1212 (C.D. Cal. 2003) ...............................................7

*Bennett v. Spear,*
    520 U.S. 154 (1997)......................................................................... 11, 13

*Chron. Publ'g Co. v. Nat'l Broad. Co.,*
    294 F.2d 744 (9th Cir. 1961) ................................................................17

*Clinton v. Acequia, Inc.,*
    94 F.3d 568 (9th Cir. 1996) ..................................................................14

*CMAX, Inc. v. Hall,*
    300 F.2d 265 (9th Cir. 1962) ................................................................17

*Ctr. for Biological Diversity v. Marina Point Dev. Co.,*
    566 F.3d 794 (9th Cir. 2009) ..................................................................9

*Ctr. for Marine Conservation v. Brown,*
    917 F. Supp. 1128 (S.D. Tex. 1996)....................................................13

*Ethyl Corp. v. Browner,*
    989 F.2d 522 (D.C. Cir. 1993).............................................................20

*Karuk Tribe of Cal. v. U.S. Forest Serv.,*
    681 F.3d 1006 (9th Cir. 2012) ........................................................ 2, 15

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936)............................................................................17

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ...........................................................17

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) .............................................................7

*Moden v. U.S. Fish & Wildlife Serv.*,
   281 F. Supp. 2d 1193 (D. Or. 2003) ..................................................9

*Norton v. S. Utah Wilderness*,
   *All.*, 542 U.S. 55 (2004)...................................................................19

*Ohio Forestry Ass'n v. Sierra Club*,
   523 U.S. 726 (1998)................................................................. 14, 16

*Or. Nat. Desert Ass'n v. Tidwell*,
   716 F. Supp. 2d 982 (D. Or. 2010) ..................................................11

*Reno v. Catholic Soc. Servs., Inc.*,
   509 U.S. 43 (1993)................................................................... 12, 16

*Ricci v. Chi. Mercantile Exch.*,
   409 U.S. 289 (1973)..........................................................................18

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987) ...........................................................7

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
   Nos. 2:13-cv-00059-MCE, 2:13-cv-00042-MCE, 2013 WL 4094777 (E.D. Cal.
   Aug. 13, 2013) ..................................................................................20

*San Luis & Delta-Mendota Water Auth. v. Salazar*,
   638 F.3d 1163 (9th Cir. 2011) ................................................... 13, 14

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) ...................................................................7

*St. Clair v. City of Chico*,
   880 F.2d 199 (9th Cir. 1989) ...................................................................7

*Stock West, Inc. v. Confederated Tribes of the Colville,*
   *Rsrv.*, 873 F.2d 1221 (9th Cir. 1989) .....................................................6

*Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*,
   143 F.3d 515 (9th Cir. 1998) ........................................................... 8, 11

*Pub. Emps. for Env't Resp. v. U.S. Dep't of the Navy*,
   No. C08-5552BHS, 2009 WL 2163215 (W.D. Wash. July 17, 2009) ................18

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ................................................................................16

*W. Watersheds Project v. Bureau of Land Mgmt.*,
   552 F. Supp. 2d 1113 (D. Nev. 2008) ....................................................11

*W. Watersheds Project v. Kraayenbrink*,
   Nos. CV-05-297-E-BLW, 06-275-E-BLW, 2007 WL 952013 (D. Idaho Mar. 27,
   2007) ..........................................................................................................11

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................12

STATUTES

16 U.S.C. § 1540(g)(2)(A)(i) .............................................................................2, 8
16 U.S.C. § 1536(a)(2) ................................................................................... 2, 15


FEDERAL REGULATIONS

Federal Rule of Civil Procedure 12(b)(1) ...........................................................1, 7
50 C.F.R. § 402.14(g)-(h) .....................................................................................2

50 C.F.R. § 402.03 ...................................................................................................2

50 C.F.R. § 402.12(f) ..............................................................................................16

## INTRODUCTION

Federal Defendants Leanne Marten, in her official capacity as Regional Forester of Region One of the United States Forest Service ("Forest Service"), the Forest Service, and the United States Fish and Wildlife Service ("FWS"), respectfully move this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiff's Amended Complaint (ECF No. 3) for lack of jurisdiction because Plaintiff's have failed to comply with the requisite Endangered Species Act's 60-day notice requirement and because Plaintiff's claims are not yet ripe. In the alternative, Federal Defendants move for a stay of proceedings until July 15, 2021, to allow time for the Forest Service to issue a Record of Decision ("ROD") for the 2021 Helena-Lewis and Clark National Forest Land Resource Management Plan ("2021 Revised Forest Plan") and for the FWS to complete the biological opinion ("BiOp") for the Elkhorns, North Belts and South Belts travel plans.[1]

Federal Defendants have conferred with counsel for Plaintiff the Alliance for the Wild Rockies and Plaintiff opposes this motion.

## LEGAL BACKGROUND

### I.      The Endangered Species Act

---

[1]The Biological Assessment for Ongoing Travel Plans also includes the Little Belt, Castle, and North Half Crazy Mountains Travel Management Plan, which is not the subject of this litigation.

ESA Section 7(a)(2) requires federal agencies to ensure that any action they authorize, fund, or carry out "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2). ESA Section 7(a)(2) applies only when a federal agency affirmatively authorizes, carries out, or funds an activity over which it has discretionary Federal involvement or control. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1021 (9th Cir. 2012) (en banc); 50 C.F.R. § 402.03.  If the proposed federal action "may affect" a listed species or critical habitat the action agency must engage in consultation with the consulting agency (here, FWS). Formal consultation culminates with the consulting agency's issuance of a BiOp that assesses the likelihood that the proposed action will result in "jeopardy" to the species or "destruction or adverse modification" of its critical habitat.  *Id.* § 402.14(g)-(h).

The citizen suit provision of the ESA permits any person to file a civil action for violations of the Act, but no action may be commenced under the ESA "prior to sixty days after written notice of the violation has been given." 16 U.S.C. § 1540(g)(2)(A)(i).

## FACTUAL BACKGROUND

**1. Revised Forest Plan, Travel Plans and Plaintiff's 60-day notice of intent to sue.**

Over the past several years the Helena and Lewis and Clark Forests have been in the process of revising their National Forest Land Resource Management Plans into a combined Helena-Lewis and Clark 2021 Forest Plan ("Revised Forest Plan"), including an assessment of how travel occurs on those forests, in addition to other resource area evaluations. *See* Entwistle Decl. ¶ 3. As part of that process, the agency initiated ESA Section 7 consultation with FWS on the Revised Forest Plan, submitted the Forest Service's biological assessment on the Forest Plan on March 13, 2020. *See* Ex. B at Appendix D.

In the midst of that ongoing process, on March 23, 2020 Plaintiff sent the Forest Service and the FWS a letter alleging that the agencies were required to reinitiate consultation on the 1986 Helena National Forest Land Resource Management Plan ("1986 Helena Forest Plan") and the Blackfoot, Divide, Elkhorns, North Belts, South Belts, and Rocky Mountain Ranger District Travel Plans (collectively, "travel plans"), to address "recurring illegal road use and its potential effects on grizzly bears." *See* Ex. A at 7-8.[2] On May 22, 2020 the Forest Service responded to Plaintiff that ESA Section 7 consultation on the 2021 Forest Plan was already underway, and attached the completed revised Forest Plan biological assessment. Ex. B at 3 and App. D. The Forest Service explained that although

---

[2] The most recent BiOp for the continued implementation of the 1986 Helena Forest Plan was issued by FWS in 2014.

unauthorized road use is not a federal action, the effects of any recurring illegal road use would be considered as part of the environmental baseline. *Id.* at 3. Further, because any alleged effects of recurring illegal road use would be addressed fully in the consultation for the Revised Forest Plan, there was no need to reinitiate separately on the Blackfoot, Divide, and Rocky Mountain travel plans. *Id.* at 5, 8. The Forest Service also notified Plaintiff that they intended to initiate ESA Section 7 consultation on the Elkhorns and South Belts travel plans to address effect to grizzly bears and would reinitiate consultation on the North Belts travel plan (North Belts was consulted upon for effects to lynx). *Id.* at 8. The Forest Service notified Plaintiff that effects of illegal recurring road use would be considered as part of the environmental baseline in the travel plan consultation and would likewise be covered in the Revised Forest Plan consultation. *Id.* at 8. Plaintiff did not assert there were any alleged deficiencies with the agencies' plan for addressing the alleged violations as part of the environmental baseline in either consultation.

FWS issued a BiOp for the terrestrial portion of the Revised Forest Plan ("2021 Revised Forest Plan BiOp") on February 10, 2021. *See* Ex. A. The Forest Service anticipates issuing a ROD for the Revised Forest Plan on or before July 1, 2021. *See* Entwistle Decl. ¶ 4. As promised, the Forest Service submitted one biological assessment addressing collectively the Elkhorns, North Belts, and South Belts travel plans ("Biological Assessment for Ongoing Travel Plans") to FWS on

January 27, 2021. *See* Ex. B. FWS expects to issue a BiOp for the consultation on the ongoing travel plans on or before July 15, 2021. *See* Bush Decl. ¶ 3.

### 2. Plaintiff's complaints.

Despite knowing that the agencies had already initiated consultation on the Revised Forest Plan and that the agencies were planning to consult on the Elkhorn, North Belts, and South Belts travel plans, Plaintiff filed the original complaint in this case on January 18, 2021, alleging that reinitiation of consultation was required to address recurring illegal road use and its potential effects on grizzly bears.[3] ECF No. 1 ¶¶ 128, 133, 139, 147, 154, 161, 166. In their request for relief, Plaintiff requested that this Court "[d]eclare that the agencies' failures to initiate or reinitiate ESA consultation on the [1986 Forest Plan and travel plans] violate the law; [and order] the agencies to prepare lawful ESA consultations[.]" ECF No. 1 ¶¶ A, B. Plaintiffs filed seven claims for relief, all predicated on the agencies' alleged failure to evaluate the impact of recurring illegal road use on the grizzly bear. The first claim alleged that the agencies were required to reinitiate consultation on the 1986 Forest Plan, *see* ECF No. 1 ¶¶ 127-131, while the remaining six claims challenged the agencies alleged failure to reinitiate ESA consultation on each of the travel plans identified in Plaintiff's March 2020 letter.  This, notwithstanding the fact that the

---

[3] Federal Defendants dispute that jurisdiction existed over Plaintiff's failure to reinitiate claims at the time Plaintiff filed its complaint because the agencies had already commenced that procedure.

agencies informed Plaintiff that the impacts of recurring illegal road use *would* be considered as part of the revised Forest Plan consultation already underway. *See* ECF No. 1 ¶¶ 132-170.

When Federal Defendants informed Plaintiff that, as predicted, their claims were moot because the agencies had already initiated consultation on the Forest Plan and the Elkhorns, North Belts, and South Belts travel plans, Plaintiff hastily amended its complaint to add allegations aimed at the sufficiency of those consultations. *See* ECF No. 3. The amended allegations assert that the agencies are required to reinitiate consultation to address illegal road use on grizzly bears, this time claiming that the FWS BiOp for the Revised Forest Plan and the Forest Service Biological Assessment for the Ongoing Travel Plans are deficient. *See*, *e.g.*, ECF No. 3 ¶¶ A, B ("[d]eclare that the agencies' Revised Forest Plan Biological Opinion, and failures to initiate or reinitiate ESA consultation to fully and fairly discuss the potential effects of illegal motorized use on grizzly bears for the [t]ravel [p]lans . . . violate the law; [and order] the agencies to prepare a lawful Revised Forest Plan Biological Opinion and/or lawful ESA consultations on the [t]ravel [p]lans").

## STANDARD OF REVIEW

"A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "[W]hen a

defendant brings a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing jurisdiction." *Bassiri v. Xerox Corp.*, 292 F. Supp. 2d 1212, 1219 (C.D. Cal. 2003) (citation omitted), *rev'd and remanded on other grounds*, *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists.") (citation omitted). When considering a motion under Federal Rule of Civil Procedure 12(b)(1), a court "is not restricted to the face of the pleadings," *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), but rather may resolve factual disputes relating to jurisdiction based on extrinsic evidence, *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

## ARGUMENT

**1. The Court lacks jurisdiction over Plaintiff's claims because Plaintiff has failed to provide the requisite 60-day notice of intent to sue under the ESA.**

Plaintiff's claims against the Forest Service and FWS have evolved from initially alleging a total failure to address the impact of illegal road violations on grizzly bears in the 2014 consultation on the 1986 Forest Plan or the Blackfoot, Divide, Elkhorns, North Belts, South Belts, and Rocky Mountain Travel Plans, to claims challenging the *sufficiency* of the agencies' ESA consultation on the 2021 Revised Forest Plan BiOp and the ongoing travel plan consultation (Elkhorns, North

Belts, and South Belts travel plans). *Compare* ECF No. 1 ¶¶ A, B (asking the Court to "[d]eclare that the agencies' failures to initiate or reinitiate ESA consultation on the [1986 Forest Plan and travel plans] violate the law; [and order] the agencies to prepare lawful ESA consultations") *with* ECF No. 3 ¶¶ A, B ("[d]eclare that the agencies' Revised Forest Plan Biological Opinion, and failures to initiate or reinitiate ESA consultation to fully and fairly discuss the potential effects of illegal motorized use on grizzly bears for the [t]ravel [p]lans . . . violate the law; [and order] the agencies to prepare a lawful Revised Forest Plan Biological Opinion and/or lawful ESA consultations on the [t]ravel [p]lans"). Yet Plaintiff never provided a notice of intent to sue over the sufficiency of the 2021 Forest Plan BiOp or the Forest Service's biological assessment for the ongoing travel plans.

No action may be commenced under the ESA "prior to sixty days after written notice of the violation has been given." 16 U.S.C. § 1540(g)(2)(A)(i). A notice letter must alert the recipients to the actual violation alleged in a subsequently-filed complaint, and insufficiency of such notice will be an absolute bar to jurisdiction. *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520-22 (9th Cir. 1998). The provision requires a party to identify the alleged "violation" with specificity. 16 U.S.C. § 1540(g)(2)(A)(i). "[E]ven at our most lenient we have never abandoned the requirement that there be a true notice that tells a target *precisely* what it allegedly did wrong, and when. The target is not required to play a

guessing game in that respect." *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 801 (9th Cir. 2009) (emphasis added). For that reason, pre-violation notice letters are insufficient to afford the Forest Service or FWS the opportunity to rectify the asserted violations. *E.g.*, *Moden v. U.S. Fish & Wildlife Serv.*, 281 F. Supp. 2d 1193, 1206 (D. Or. 2003).

Plaintiff alleges that they "submitted a 60 Day Notice of Intent to Sue under the ESA to Defendants over 60 days prior to filing this complaint." ECF No. 3 ¶ 8. But, the only letter Federal Defendants received from Plaintiffs alleging any ESA violations was dated March 23, 2020, before the agencies began consultation on the travel plans and before the FWS issued the challenged 2021 Revised Forest Plan BiOp. Thus the notice letter predates the documents which Plaintiff now challenges, which should be sufficient to dismiss the amended complaint. *See Moden*, 281 F. Supp. 2d at 1206.

Even setting aside the timing of the letter relative to the challenged documents, Plaintiff's purported notice of intent ("NOI") is insufficient. Rather, than alerting the agencies to any alleged violations as to the sufficiency of the consultation documents, which is basis of Plaintiff's claims in the amended complaint, Plaintiff asserts in the NOI that the relevant ESA violation is that the agencies had failed to address "recurring illegal road use and its potential effects on grizzly bears" for the 1986 Forest Plan and the named travel plans; therefore, the agencies were required

9

to reinitiate consultation to address that information. *See* Ex. A at 7-8. But, as Plaintiff was informed, at the time of the March 2020 letter, the agencies had already initiated consultation on the Revised Forest Plan and were taking steps to initiate consultation on the Elkhorns and South Belts travel plans and reinitiate consultation on the North Belts travel plan. Ex. B at 8. Plaintiff was also informed that the effects of recurring illegal road effects on grizzly bears would be analyzed as part of the environmental baseline in the Forest Plan consultation and the ongoing travel plans consultation. *Id*. at 3, 8. Yet, Plaintiff did not notify the agencies that there were any alleged deficiencies with the agencies' plan to proceed, as there are no allegations in Plaintiff's March 2020 letter that allege that the Forest Service could not tier to the Forest Plan consultation. *See*, *e.g.,* ECF No. 3 ¶ 174 (alleging that the "Forest Service's attempt to tier the Divide Travel Plan consultation" fails based on the sufficiency of the Revised Forest Plan BiOp).

Plaintiff might argue that its challenge to the 2021 Revised Forest Plan BiOp is an Administrative Procedure Act ("APA") claim, and thus no 60-day notice is required. *See Am. Rivers v. Nat'l Marine Fisheries Serv.,* 126 F.3d 1118, 1124-25 (9th Cir. 1997), *as amended* (Sept. 16, 1997). But claims against the Forest Service for violating the ESA are subject to the ESA's 60-day notice requirement, *id*. at 1125, and it is clear that Plaintiff attacks the sufficiency of the BiOp to do just that. *See*

ECF No. 3 ¶¶ 168, 174, 181, 189, 197, 204 (asserting that the Forest Service cannot rely on the 2021 Revised Forest Plan BiOp to fulfill its ESA obligations).[4]

Accordingly, the Court lacks jurisdiction over Plaintiff's claims. *Sw. Ctr.*, 143 F.3d at 520 (the ESA notice provision is jurisdictional; a failure to "strictly comply" acts as an "absolute bar" to suit under the ESA); *W. Watersheds Project v. Kraayenbrink,* Nos. CV-05-297-E-BLW, 06-275-E-BLW, 2007 WL 952013, at *1 (D. Idaho Mar. 27, 2007) (notice letters "cannot be used to support later-filed ESA claims that were not mentioned in the letter") (citation omitted). Plaintiff's amended complaint should be dismissed.

### 2. Plaintiff's challenges to the sufficiency of the consultations are not ripe.

Along with the inadequacy of Plaintiff's ESA notice, there is a separate and independent basis for dismissing Plaintiff's claims: any challenge to the sufficiency of the 2021 Revised Forest Plan BiOp or the travel plans consultation is not yet ripe.

---

[4] For this reason Plaintiff may not use the APA to avoid its 60-day notice obligations to challenge the substance of the Forest Service's biological assessment for the ongoing travel plans either. Setting aside any deficiency in Plaintiff's 60-day notice, the Court also lacks jurisdiction over any challenge to the substance of the biological assessment because it a biological assessment is not itself a final agency action within the meaning of the APA. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *see also Or. Nat. Desert Ass'n v. Tidwell*, 716 F. Supp. 2d 982, 995 (D. Or. 2010) (rejecting challenge to BAs prepared by USFS, finding that, under *Bennett*, "the assessments did not mark the consummation of the agency's decision making and were not actions from which legal consequences flowed *W. Watersheds Project v. Bureau of Land Mgmt.*, 552 F. Supp. 2d 1113, 1141 (D. Nev. 2008) (holding that a biological assessment was not final agency action subject to judicial review).

Here, the ROD adopting the Forest Plan (and implementing the "agency action" analyzed in the BiOp) is expected to issue on or before July 1, 2021. Entwistle Decl. ¶ 4. Likewise, FWS is not expected to issue a BiOp on the travel plans until July 15, 2021. Bush Decl. ¶ 3. It is premature for the Court to determine whether the either ESA consultation process is sufficient until those events materialize.

Ripeness is a doctrine of justiciabilty "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n.18 (1993) (citations omitted). It is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). A ripeness inquiry concerns "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). In determining if a claim is ripe, a court must evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. The first prong – the fitness inquiry – often turns on whether further factual development would advance the Court's ability to deal with the legal issues

at hand. *San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1173 (9th Cir. 2011).

Here, no ROD has been issued adopting the Revised Forest Plan and the Forest Service has not formally determined how it wishes to proceed with its ESA obligations. Thus, Plaintiff's challenge to the sufficiency of the underlying ESA consultation on the Revised Forest Plan is not fit for judicial review because it is based on uncertain and contingent events that may not occur as anticipated *Abbott Labs.*, 387 U.S. at 148. Likewise, the FWS has not issued its BiOp in the ongoing travel plan consultation. Certainly, further factual development in the form of a completed FWS BiOp is necessary to aid the Court in determining whether the agencies' consultation reasonably considered the effects of illegal recurring road use on grizzly bears. *See Salazar*, 638 F.3d at 1173.

Moreover, the 2021 Revised Forest Plan BiOp, though final within the meaning of the APA, currently has no legal effect as to the Forest Service. *See, e.g.*, *Ctr. for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1152 (S.D. Tex. 1996) (noting that a BiOp is not self-executing but rather must be adopted by the action agency). The Forest Service is "technically free to disregard the Biological Opinion and proceed with its proposed action" (albeit at its own peril), or to adopt the BiOp only in part, so long as it otherwise ensures that it is meeting its substantive obligation under ESA Section 7(a)(2) to avoid jeopardy. *Bennett*, 520 U.S. at 170.

Thus, the Court's analysis of the sufficiency of the ESA consultation on the Revised Forest Plan hinges, in part, on how the Forest Service plans to proceed. That will become clear once the Forest Service issues a ROD. Until then, adjudicating the BiOp that is untethered to a ROD would be a purely academic exercise.

In light of these contingencies, review of the 2021 Revised Forest Plan BiOp prior to the ROD approving the Revised Forest Plan would be a waste of judicial resources. *See Clinton v. Acequia, Inc.*, 94 F.3d 568, 572-73 (9th Cir. 1996) ("[A] case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur.") (citations omitted); *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 736 (1998) (finding challenge to forest plan unripe because it would "require time-consuming judicial consideration of the details of an elaborate, technically based plan" when "depending upon the agency's future actions to revise the Plan or modify the expected methods of implementation, review now may turn out to have been unnecessary") (citations omitted). The Court plainly would benefit from postponing review to allow for further factual development that could present the dispute in a more concrete form rather than entangle itself in an ongoing administrative process.

The Court would also benefit from further factual development as to the ongoing travel plans consultation rather than evaluating the sufficiency of the underlying consultation before it is even complete.  *Salazar*, 638 F.3d at 1173.

14

Indeed the risk of entanglement in an ongoing administrative process runs particularly high in the ongoing travel plan consultation because Plaintiff is asking the Court to dictate the substance of the consultation documents before FWS has even had a chance to render its opinion on the effects of the travel plans. *See*, *e.g.*, ECF No. 3 ¶¶ 182, 190, 198, B (alleging deficiencies with the Forest Service combined travel plans biological assessment and asking that the Court order the agency to "prepare lawful ESA consultations [on the Travel Plans]."). It is clear that Plaintiff aims to challenge the sufficiency of the combined travel plan biological assessment and on that basis is asking the Court to infer that the outcome of the ongoing ESA consultation will be deficient before FWS has even had the chance to complete its BiOp.  This level of speculation is plainly improper and puts the Court squarely in the middle of the agencies' administrative process.

Moreover, Plaintiff is inviting the Court to dictate the manner in which the agencies must comply with their consultation obligations when the underlying statute itself is silent on the matter. *See* 16 U.S.C. § 1536(a)(2) (requiring only that each Federal agency insure that any action is not likely to jeopardize the continued existence of any endangered species or threatened species with no direction as to *the manner* in which ESA consultation must be conducted); *see also Karuk Tribe of Cal.*, 681 F.3d at 1020 (the relevant concern under the ESA is whether the effects of the agency action on a species have been addressed). Indeed, the contents of the

biological assessment are entirely discretionary. 50 C.F.R. § 402.12(f) (the contents of the biological assessment "are at the discretion of the Federal agency and will depend on the nature of the Federal action.").  It would be improper for the Court to intercede and interfere with the agencies' exercise of discretion to determine the manner in which to fulfill their statutory duties at this juncture.  *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978).

Nor can Plaintiff show that it will prejudiced by a delay in review. Plaintiff fails to allege any on the ground actions or harm that will accrue to grizzly bears before the ROD issues, or before FWS can issue its opinion on the ongoing travel plan consultation. *See Reno,* 509 U.S. at 57 (noting ripeness requires "the effects of the administrative action challenged [to] have been 'felt in a concrete way by the challenging parties.'") (citations omitted). Similarly, the costs of additional litigation are insufficient to justify premature review. *See Ohio Forestry Ass'n,* 523 U.S. 726, 735 (1998) ("The ripeness doctrine reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs of—even repetitive—postimplementation litigation.") (citation omitted). Additional steps need to occur before this dispute is ripe, and Plaintiff will have ample opportunity to seek future review of the 2021 Forest Plan and the combined travel plan consultation in the near future. The Court need not and should not intercede now.

**3. In the alternative, this case should be stayed until the ongoing consultation is completed in July or the ROD issues.**

Although dismissal is warranted here for the reasons explained above, to conserve the Court's and the parties' resources, Federal Defendants move in the alternative to stay this case until July 15, 2021 or until the Forest Service issues the 2021 Revised Forest Plan ROD and the FWS issues a BiOp on the combined travel plans, whichever is earlier.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co*., 299 U.S. 248, 254 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Leyva v. Certified Grocers of Cal.*, *Ltd.,* 593 F.2d 857, 863-64 (9th Cir. 1979); *Chron. Publ'g Co. v. Nat'l Broad. Co.*, 294 F.2d 744, 747 (9th Cir. 1961). Three factors guide this Court's determination of whether a stay should be granted: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268 (citation omitted). Application of these factors to the facts present before the Court demonstrates that a stay of the litigation is warranted.

17

First, no harm is likely to result from a stay.  *See Pub. Emps. for Env't Resp. v. U.S. Dep't of the Navy*, No. C08-5552BHS, 2009 WL 2163215, at *10-12 (W.D. Wash. July 17, 2009) (no harm where the district court stayed a case pending additional NEPA review and renewed ESA consultation). Plaintiff alleges no on-the-ground action that will result in harm—indeed, Plaintiff does not seek injunctive relief since there is no basis for it.  Thus, Plaintiff's interest in grizzly bears will not be harmed during the pendency of a short stay.

Second, Federal Defendants will suffer hardship by having to litigate this case before the Forest Service issues the 2021 Forest Plan ROD or the FWS completes its end of the consultation on the combined travel plans. In addition to diverting resources to prematurely defending this litigation, judicial review at this juncture would inappropriately insert the Court into the role of supervising the agencies' ongoing decision-making process. Congress delegated the responsibility to the Federal agencies to administer and enforce the various environmental laws in the first instance. Because ongoing review processes are underway, the agencies should be afforded an opportunity to complete the reviews before (or if) the court ultimately addresses Plaintiff's disputes. *Cf. Ricci v. Chi. Mercantile Exch.*, 409 U.S. 289, 305-06 (1973) ("[C]ourts, while retaining the final authority to expound the statute, should avail themselves of the aid implicit in the agency's superiority in gathering the relevant facts and in marshaling them into a meaningful pattern.") (citation

omitted); *Cf. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004) ("principal purpose" of the APA's limitations on review is "to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve," and "[t]he prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA").

Third, and most importantly, a stay would serve judicial economy by avoiding the Court's entanglement in the consultation process before final decisions have been issued by either agency. First, it is unlikely that the Court will resolve the merits of Plaintiff's claims before July 15, 2021. The agencies still need to compile and lodge their administrative records (including for the ongoing environmental analyses), Plaintiff will want the opportunity to challenge those administrative records, and then the parties will need to establish a briefing schedule all before the parties submit their respective merits briefing. Second, even if the Court was able to reach the merits of this case, once the Forest Service issues the 2021 Forest Plan ROD and the FWS issues its opinion on the combined travel plan consultation, Plaintiff is likely to amend the complaint again to challenge *those* decisions. Staying the case now would avoid the Court and the parties spending resources on what will essentially be an advisory opinion. "[W]here agencies proposed to resolve disputed issues administratively, courts should ordinarily 'allow agencies to cure their own

mistakes rather than wasting the courts' and the parties' resources[.]'" *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, Nos. 2:13-cv-00059-MCE, 2:13-cv-00042-MCE, 2013 WL 4094777, at *9 (E.D. Cal. Aug. 13, 2013) (quoting *Ethyl Corp. v. Browner,* 989 F.2d 522, 524 (D.C. Cir. 1993)). "[S]cientific judgments and technical analyses are ordinarily matters within the agency's particular expertise, and are accordingly more efficiently and effectively resolved by the agency itself," particularly where, as here, the agencies have begun the process and expect to complete it in a few months. *Id.* In short, if the Court declines to dismiss Plaintiff's claims at this time, a brief stay is warranted.

## CONCLUSION

The Court should grant Federal Defendants' motion and dismiss Plaintiff's Amended Complaint for lack of jurisdiction. In the alternative, the Court should stay this case until July 15, 2021 or until the Forest Service issues the 2021 Forest Plan ROD and the FWS issues a BiOp on the ongoing travel plans, whichever occurs sooner.

Respectfully submitted on this 22day of March 2021.

JEAN E. WILLIAMS,
Acting Assistant Attorney General
Environment & Natural Resources Division
SETH M. BARSKY, Section Chief
S. JAY GOVINDAN, Assistant Section
Chief

*/s/ Nicole M. Smith*
NICOLE M. SMITH

20

Trial Attorney, CA Bar No. 303629
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0368 (tel)
(202) 305-0275 (fax)
Nicole.M.Smith@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I certify that I electronically filed and served the foregoing with the Clerk of the Court for the United States District Court for the District of Montana using the CM/ECF system. I further certify that, excluding caption, certificate of compliance, table of contents and authorities, exhibit index, and any certificate of service, the foregoing brief contains 4,987 words.

/s/ *Nicole M. Smith*
NICOLE M. SMITH