Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, PC
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | |
| Plaintiff, | |
| vs. | CV- 21- 05- DLC |
| LEANNE MARTEN, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, and UNITED STATES FISH & WILDLIFE SERVICE, an agency of the U.S. Department of Interior. | **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |
| Defendants. | |

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INDEX OF EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.  RESPONSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

       A.     A challenge to a Biological Opinion does not require a 60-day notice
             or a concurrent challenge to a NEPA Record of Decision.  . . . . . . . .  4

           1.     A challenge to the substance of a Biological Opinion is an APA
                  challenge; therefore, the 60-day notice requirement found in
                  the ESA citizen suit provision does not apply. . . . . . . . . . . . .  4

           2.     The Biological Opinion for the Revised Forest Plan is the final
                  agency action being challenged in this case; there is no legal
                  basis for Defendants' argument that Plaintiff must wait for the
                  NEPA Record of Decision for the Revised Forest Plan. . . . . .  8

       B.     The agencies refused to reinitiate ESA consultation on the Blackfoot,
             Divide, and Rocky Mountain Ranger District Travel Plans so Claims
             2, 3, and 7 are covered by the 60-day notice, ripe, and not moot. . .  11

       C.     The  Forest Service's new Biological Assessment for the Elkhorns,
             North Belts, and South Belts Travel Plans does not address the issues
             raised by Plaintiff in this case and therefore does not render Claims 4,
             5, and 6 moot or unripe. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

           1.     Claims 4, 5, and 6 were ripe when this action was instituted.  14

           2.     Defendants fail to meet their heavy burden to establish
                  mootness because they do not provide any legal argument
                  regarding mootness; regardless, their new consultation does not

          address Plaintiff's concerns, and therefore it does not prevent
          the Court from providing effective relief for Claims 4, 5,
          and 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

TABLE OF AUTHORITIES

CASES

*All. for the Wild Rockies v. Marten*,
200 F.Supp.3d 1129  (D. Mont. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*American Rivers v. National Marine Fisheries Serv.*,
126 F.3d 1118 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bennett v. Spear*, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9

*Cottonwood Environment L. Ctr. v. USFS,* 789 F.3d 1075 (9th Cir. 2015) . . . . . 15

*Ctr. for Biological Diversity v. USFWS,* 450 F.3d 930 (9th Cir. 2006) . . . . . . . . 10

*Ctr. for Marine Conservation v. Brown,* 917 F. Supp. 1128 (S.D. Tex. 1996). . 8, 9

*Dow AgroSciences LLC v. NMFS,* 637 F.3d 259 (4th Cir. 2011) . . . . . . . . . . . . 11

*Forest Guardians v. Johanns,* 450 F.3d 455 (9th Cir. 2006). . . . . . . . . . 17, 18, 19

*Malama Makua v. Rumsfeld,* 136 F.Supp.2d 1155 (D. Haw. 2001) . . . . . . . . 14, 16

*Northwestern Environment Defense Ctr. v. Gordon,*
849 F.2d 1241 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pacific Coast Federation of Fishermen's Association, Incorporated v. NMFS,*
265 F.3d 1028 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*USFWS v. Sierra Club,* 141 S. Ct. 777 (2021). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STATUTES

5 U.S.C. §704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5 U.S.C. §706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16 U.S.C. §1533 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

16 U.S.C. §1536 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

16 U.S.C. § 1540. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

REGULATIONS

50 C.F.R. §402.14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

INDEX OF EXHIBITS

| EXHIBIT 1 | U.S. Fish & Wildlife Service, Revised Forest Plan Biological Opinion (February 10, 2021) |
|---|---|
| EXHIBIT 2 | U.S. Forest Service, Biological Assessment for the Elkhorns, South Belts, North Belts, and Little Belts Travel Plans (January 27, 2021) |
| DOCUMENT 6-2 (Defendants' Exhibit A) | Plaintiff's March 23, 2020 ESA 60-day notice of intent to sue |
| DOCUMENT 6-3 (Defendants' Exhibit B) | U.S. Forest Service's May 22, 2020 response to Plaintiff's ESA 60-day notice of intent to sue |

## I.  INTRODUCTION

Roads are the most imminent threat to grizzly bears.  Because of this fact, grizzly bear habitat protections primarily focus on objective, quantitative road density standards that must be met in grizzly bear habitat.  In order for these road density standards to achieve their purpose, however, the government must use accurate road density calculations in its management documents.  The impetus for this case is Plaintiff's discovery that the Helena-Lewis and Clark National Forest is not using accurate road density calculations in grizzly bear habitat.  Without accurate calculations, the management approach for grizzly bears on this Forest collapses like a house of cards.

As set forth in Plaintiff's First Amended Complaint, Doc. 3, records from U.S. Forest Service (Forest Service) Law Enforcement Officers indicate that illegal road use in grizzly bear country is a chronic and pervasive problem on the Helena-Lewis and Clark National Forest.  Nonetheless, there is a disconnect between the records kept by the Forest Service law enforcement division and the grizzly bear analysis documents created by the Forest Service land management division – it does not appear that Forest Service managers request this available information from Forest Service law enforcement and incorporate it into analysis documents as a matter of course.  As a result, management analysis documents are not using road density calculations that are consistent with actual motorized use on

the ground.

Additionally, the Forest Service has issued a number of programmatic road management plans called "travel plans." However, the majority of roads nominally closed on paper by these travel plans – hundreds of miles of roads – are still physically open to public motorized use. In project analysis documents, managers use the road density figures approved by the travel plans on paper even though those figures do not reflect accurate on-the-ground conditions. Thus, nominally closed roads are excluded from "open road" density calculations even though those roads are physically open to motorized use on the ground.

These two issues create a situation where the road conditions encountered by grizzly bears across the landscape are very different than the road calculations on paper. To remedy this problem, this case challenges the Forest Service's and U.S. Fish and Wildlife Service's (FWS) inadequate ESA consultations as follows:

• Claim 1 – inadequate Biological Opinion for the Revised Forest Plan,

• Claim 2 – failure to reinitiate ESA consultation on the Blackfoot Travel Plan,

• Claim 3 – failure to reinitiate ESA consultation on the Divide Travel Plan,

• Claim 4 – failure to initiate or reinitiate ESA consultation on the Elkhorns Travel Plan regarding illegal road use and the Forest Service's failure to fully and effectively enforce travel plan restrictions,

2

- <u>Claim 5</u> –  failure to initiate or reinitiate ESA consultation on the North Belts Travel Plan regarding illegal road use and the Forest Service's failure to fully and effectively enforce travel plan restrictions,

- <u>Claim 6</u> – failure to initiate or reinitiate ESA consultation on the South Belts Travel Plan regarding illegal road use and the Forest Service's failure to fully and effectively enforce travel plan restrictions, and

- <u>Claim 7</u> – failure to reinitiate ESA consultation on the Rocky Mountain Ranger District Travel Plans.

In response, the agencies have moved to dismiss Plaintiff's First Amended Complaint in its entirety, or in the alternative, moved to stay the case.  Doc.  5.  The agencies argue that (1) Plaintiff cannot challenge the Revised Forest Plan Biological Opinion without a 60-day notice of intent to sue, (2) Plaintiff's challenges to the travel plans are either moot, unripe, and/or not covered by Plaintiff's ESA 60-day notice, and/or (3) the Court should stay the case until a Record of Decision is issued for the Revised Forest Plan, and a Biological Opinion is issued for the Elkhorn and Belts Travel Plans.

As set forth below, Defendants' arguments are not well-taken.  First,  a challenge to a Biological Opinion does not require a 60-day notice or a Record of Decision.  Second, the agencies refused to reinitiate ESA consultation on the Blackfoot, Divide, and Rocky Mountain Ranger District Travel Plans so Claims 2,

3, and 7 are covered by Plaintiff's 60-day notice, ripe, and not moot.  Third, the

Forest Service's new Biological Assessment for the Elkhorns, North Belts, and

South Belts Travel Plans does not address the issues raised by Plaintiff in this case

so Claims 4, 5, and 6 are also covered by Plaintiff's 60-day notice, ripe, and not

moot.

Plaintiff requests oral argument on this motion.

## II.  RESPONSE

**A.    A challenge to a Biological Opinion does not require a 60-day notice or a concurrent challenge to a NEPA Record of Decision.**

**1.    A challenge to the substance of a Biological Opinion is an APA challenge; therefore, the 60-day notice requirement found in the ESA citizen suit provision does not apply.**

First, Defendants argue that "Plaintiff never provided a notice of intent to

sue over the sufficiency of the 2021 Forest Plan BiOp . . . ."  Doc. 6 at 8.

However, as Plaintiff explained in writing to agency counsel prior to the filing of

the instant motion to dismiss, the law is well-established that a challenge to a

Biological Opinion is an APA claim that does not require a  60-day notice.

In *Bennett v. Spear*, the Supreme Court ruled that while a challenge to a

critical habitat designation is a "non-discretionary duty" claim under ESA Section

1533 (Section 4), which falls under the ESA citizen suit provision, a challenge to

the substance of a Biological Opinion under ESA Section 1536 (Section 7) is an

APA claim, not an ESA citizen suit claim. 520 U.S. 154, 171-179 (1997).   First,

the court noted the relevant text of the ESA citizen suit provision:

> any person may commence a civil suit on his own behalf—
>
> (A) to enjoin any person, including the United States and any other
> governmental instrumentality or agency . . . who is alleged to be in
> violation of any provision of this chapter or regulation issued under
> the authority thereof; or
> . . .
> (C) against the Secretary [of Commerce or the Interior] where there is
> alleged a failure of the Secretary to perform any act or duty under
> section 1533 of this title which is not discretionary with the Secretary.

520 U.S. at 171 (quoting 16 U.S.C. § 1540(g)(1)).  The court then held:

> Turning first to subsection (C): that it covers only violations of §1533
> is clear and unambiguous. Petitioners' first and second claims, which
> assert that the Secretary has violated §1536, are obviously not
> reviewable under this provision.  However, as described above, the
> third claim alleges that the Biological Opinion implicitly determines
> critical habitat without complying with the mandate of §1533(b)(2) . .
> . . This claim does come within subsection (C).
> . . .
>
> the terms of §1533(b)(2) are plainly those of obligation rather than
> discretion . . . .  Since it is the omission of these required procedures
> that petitioners complain of, their §1533 claim is reviewable under
> §1540(g)(1)(C).
>
> Having concluded that petitioners' §1536 claims are not reviewable
> under subsection (C), we are left with the question whether they are
> reviewable under subsection (A) . . . .  Viewed in the context of the
> entire statute, §1540(g)(1)(A)'s reference to any "violation" of the
> ESA cannot be interpreted to include the Secretary's
> maladministration of the ESA.  Petitioners' claims are not subject to
> judicial review under §1540(g)(1)(A).
>
> . . .

In the claims that we have found not to be covered by the ESA's citizen-suit provision, petitioners allege a violation of §7 of the ESA, 16 U.S.C. §1536, which requires, inter alia, that each agency "use the best scientific and commercial data available," §1536(a)(2). Petitioners contend that the available scientific and commercial data show that the continued operation of the Klamath Project will not have a detrimental impact on the endangered suckers, that the imposition of minimum lake levels is not necessary to protect the fish, and that by issuing a Biological Opinion which makes unsubstantiated findings to the contrary the defendants have acted arbitrarily and in violation of §1536(a)(2).

. . .

Petitioners' §1533 claim is reviewable under the ESA's citizen-suit provision, and petitioners' remaining claims are reviewable under the APA.

520 U.S. at 176-179.  Similarly here, Plaintiff's challenge to the substance of the

Biological Opinion for failure to comply with ESA Section 7 and the APA, Doc. 3

¶163, is an APA claim, not an ESA citizen suit claim, because it challenges "the

Secretary's maladministration of the ESA" by "alleg[ing] a violation of §7 of the

ESA . . . ." *Id.*

The 60-day notice is a requirement for claims brought under the ESA citizen

suit provision:  "No action may be commenced under subparagraph (1)(A) of this

section [] prior to sixty days after written notice . . . ."  16 U.S.C. §1540(g)(2)(A).

"[S]ubparagraph (1)(A)" falls under "**(g) Citizen suits**."   16 U.S.C.

§1540(g)(1)(A).  Thus, this requirement only applies to claims brought as ESA

citizen suit claims.  *Id.*  There is no analogous provision in the APA; the APA

contains no 60-day notice requirement.  *See* 5 U.S.C. §704.

Accordingly, the Ninth Circuit holds that challenges to Biological Opinions

do not require a 60-day notice:

> In *Bennett*, the Court held that *challenges to the adequacy of biological opinions* against the Secretary of the Interior, when acting in his capacity as Administrator of the Endangered Species Act, are not properly pled as citizen suit claims under Section 11(g)(1)(A) of the Act.  The Court then held that such claims could be pled under the Administrative Procedure Act, which authorizes courts to set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §706. Such actions under the Administrative Procedure Act *do not require the sixty-day notice requirement* set forth in the Endangered Species Act.  Therefore, failure to provide such notice does not deprive the court of jurisdiction to entertain such claims."

*Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124-25 (9th Cir.

1997)(emphases added), as amended (Sept. 16, 1997).

This legal principle – that a challenge to a Biological Opinion is an APA

claim, not an ESA citizen suit claim, and therefore does not trigger the 60-day

notice requirement under the ESA citizen suit provision – has been established for

over 20 years.  *Id.*  For this reason, Defendants' argument must be rejected, and

the claim against the Revised Forest Plan Biological Opinion must proceed.

Defendants' assertion otherwise ignores and/or misunderstands the Supreme

Court's decision in *Bennett*.  Doc. 6 at 10.

**2.      The Biological Opinion for the Revised Forest Plan is the final agency action being challenged in this case; there is no legal basis for Defendants' argument that Plaintiff must wait for the NEPA Record of Decision for the Revised Forest Plan.**

Relatedly, Defendants argue that "any challenge to the sufficiency of the 2021 Revised Forest Plan BiOp . . . is not yet ripe" because the Forest Service's Record of Decision for the Revised Forest Plan, which will complete the Forest Service's ongoing NEPA review process, has not yet been issued.  Doc. 6 at 11-12.  Defendants speculate that "once the Forest Service issues the 2021 Forest Plan ROD . . . Plaintiff is likely to amend the complaint again to challenge [that] decision[]."  Doc. 6 at 19.

To the contrary, Plaintiff will not challenge the Revised Forest Plan Record of Decision in this case.  This case will only challenge the Biological Opinion for the Revised Forest Plan.  Because the Biological Opinion is a final agency action that may be challenged immediately after it is issued, *see Bennett*, 520 U.S. at 178, and because Plaintiff will not challenge the NEPA Record of Decision in this case, Defendants' arguments should be rejected.

Defendants further argue:

> Moreover, the 2021 Revised Forest Plan BiOp, though final within the meaning of the APA, currently has no legal effect as to the Forest Service. *See, e.g., Ctr. for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1152 (S.D. Tex. 1996) (noting that a BiOp is not self-executing but rather must be adopted by the action agency).

Doc. 6 at 13.  Contrary to this argument, in *Bennett*, the Supreme Court held that Biological Opinions do have a legal effect, and for that reason, they are final agency actions reviewable under the APA: "the Biological Opinion and accompanying Incidental Take Statement *alter the legal regime* to which the action agency is subject, authorizing it to take the endangered species if (but only if) it complies with the prescribed conditions. . . . the Biological Opinion at issue here has direct and *appreciable legal consequences*."  520 U.S. at 178 (emphases added).

Moreover, the Supreme Court reaffirmed the *Bennett* finding this year:  *"a final biological opinion leads to direct and appreciable legal consequences* because it alters the legal regime to which the action agency is subject, authorizing it to take action affecting an endangered species if (but only if) it complies with the prescribed conditions."  *USFWS v. Sierra Club*, 141 S. Ct. 777, 787 (2021)(internal quotation marks and citation omitted)(emphasis added).  The Texas district court case cited by the agencies – *Brown,* 917 F. Supp at 1152 – is from 1996, i.e., prior to *Bennett*, and therefore lacks even persuasive value.

Furthermore, the Ninth Circuit holds that Biological Opinions for Forest Service plans are final agency actions that may be challenged irrespective of whether the Forest Service has completed its planning process:

> The [logging companies] argue that [the plaintiff] has chosen the
> wrong target in an effort to stop all logging in a large part of Western

Oregon by seeking to overturn the [biological] opinions of NMFS which are only interlocutory in the decision making process of the Forest Service and BLM, whose respective plans to approve the timber sales in the Umpqua River watershed are the real target of this suit. We do not accept that characterization.

. . .

This no-jeopardy [biological] opinion satisfies the first part of the [final agency action] test because the issuance of a biological opinion marks the "consummation" of NMFS's consultation process. []. The opinion meets the second part of the test because it "alters the legal regime" and has direct and appreciable legal consequences. As a practical matter, the opinion and its accompanying Incidental Take Statement grant immunity to the proposed actions of other agencies required to obtain an NMFS opinion before proceeding with their own actions, which these plaintiffs seek to block.

We are satisfied that the trial court had jurisdiction, and that BLM and the Forest Service were not necessary parties.

*Pacific Coast Fed'n of Fishermen's Ass'n, Inc. v. NMFS*, 265 F.3d 1028, 1033-1034 (9th Cir. 2001).

It is likely because *Pacific Coast* so closely addresses this issue that Defendants have failed to find and cite to a single case where a court required a plaintiff to wait for the issuance of a NEPA Record of Decision in order to challenge a Biological Opinion. *See* Doc. 6 at 11-14.

Accordingly, the Court should deny the agencies' motion to dismiss Claim 1 and deny their alternative request to stay this case until the Forest Service issues the NEPA Record of Decision because the challenge to the Biological Opinion is an independent cause of action that may proceed regardless of an ongoing NEPA process. *See Pacific Coast*, 265 F.3d at 1033-1034; *see also Ctr. for Biological*

*Diversity v. USFWS*, 450 F.3d 930, 941 (9th Cir. 2006) (rejecting FWS's argument that a challenge was "not ripe for review because [the applicant]  has not completed all of the permit requirements for the proposed project" and holding that "the ESA and its regulations—unlike the Clean Water Act—do not explicitly involve compliance with other state and federal laws when issuing a biological opinion").

As the Fourth Circuit has succinctly stated:  "where judicial review of a BiOp itself is sought prior to the acting agency's final action, courts have allowed for judicial review of the BiOp, as we do here."  *Dow AgroSciences LLC v. NMFS*, 637 F.3d 259, 269 (4th Cir. 2011).

**B.**    **The agencies refused to reinitiate ESA consultation on the Blackfoot, Divide, and Rocky Mountain Ranger District Travel Plans so Claims 2, 3, and 7 are covered by the 60-day notice, ripe, and not moot.**

Although Defendants request dismissal of the entirety of Plaintiff's First Amended Complaint, they fail to provide any apparent argument why Claims 2, 3, or 7 should be dismissed.  Plaintiff submitted a 60-day notice of intent to sue on March 23, 2020, alleging that Defendants have failed to reinitiate ESA consultation on the Blackfoot Travel Plan, Divide Travel Plan,  and Rocky Mountain Ranger District Travel Plan.  Doc. 6-2 at 7-8.  In response, the agencies refused to reinitiate ESA consultation on the Blackfoot Travel Plan, Divide Travel Plan, and Rocky Mountain Ranger District Travel Plan:

- "Illegal road use is not an authorized agency action therefore consultation will not be re-initiated on the Blackfoot Non-Winter Travel Plan."  Doc. 6-3 at 5.

- "[I]llegal road use is not an authorized agency action therefore consultation will not be re-initiated for the Divide Travel Plan."  Doc. 6-3 at 8.

- "Illegal road use is not an authorized agency action therefore consultation will not be re-initiated for the Rocky Mountain Front Travel Plans (Badger-Two Medicine and Birch Creek South)."  Doc. 6-3 at 5.

These refusals led to Claims 2, 3, and 7.  Doc. 3 ¶¶164-169, 170-175, 200-205.

The only clue to Defendants' argument regarding the Blackfoot Travel Plan, Divide Travel Plan, and Rocky Mountain Ranger District Travel Plan is found in the "factual background" section of Defendants' brief, which represents:

> On May 22, 2020 the Forest Service responded to Plaintiff that ESA Section 7 consultation on the 2021 Forest Plan was already underway, and attached the completed revised Forest Plan biological assessment. [].  The Forest Service explained that although  unauthorized road use is not a federal action, the effects of any recurring illegal road use would be considered as part of the environmental baseline. [] Further, because any alleged effects of recurring illegal road use would be addressed fully in the consultation for the Revised Forest Plan, there was no need to reinitiate separately on the Blackfoot, Divide, and Rocky Mountain travel plans.

Doc. 6 at 3-4.

Contrary to this representation, however, the Revised Forest Plan Biological Opinion represents that illegal motorized use is not included or considered to be

part of the "baseline access conditions as such use was not authorized, carried out, or funded by the Forest." Ex. 1 at 14. Although this key disclosure is set forth in Plaintiff's First Amended Complaint, Doc. 3 §§154, 167, 173, 181, 189, 197, 203, Defendants do not disclose or address it in their brief, nor do they provide this Biological Opinion to the Court as an exhibit to substantiate their factual representations. Plaintiff has therefore attached this document as Exhibit 1.

Additionally, the Revised Forest Plan Biological Opinion explains:

> Some existing consultations below will continue to remain valid post consultation on the 2021 Forest Plan, while other consultations will be superseded by this consultation on the 2021 Forest Plan. This biological opinion on the 2021 Forest Plan will supersede those biological opinions associated with the Blackfoot-North Divide Winter Travel Plan, continued implementation of the existing Forest Plan, and the NCDE grizzly bear amendments associated with the existing Helena and Lewis and Clark Forest Plans.

Ex. 1 at 20. All other existing consultations, including the consultations on the non-winter Blackfoot Travel Plan, non-winter Divide Travel Plan, and Rocky Mountain Ranger District Travel Plan (Birch Creek South and Badger-Two Medicine), which are the consultations challenged in Claims 2, 3, and 7 in this case, remain in place. Ex. 1 at 20, 24, 25. Therefore, the inadequacy of these consultations is still a live controversy.

Finally, the new Biological Assessment for the Elkhorns and Belts Travel Plans also does not address the Blackfoot, Divide, or Rocky Mountain District Travel Plans. Defendants did not provide this document to the Court so Plaintiff is

attaching the document as Exhibit 2.

For all of these reasons, Claims 2, 3, and 7 are covered by Plaintiff's 60-day notice, ripe for review, and not moot:  the 60-day notice raises the failure to reinitiate ESA consultation; the agencies refused to reinitiate ESA consultation; and the Revised Forest Plan Biological Opinion does not supersede the existing consultations, nor does it include illegal road use in the baseline access condition.

**C.    The  Forest Service's new Biological Assessment for the Elkhorns, North Belts, and South Belts Travel Plans does not address the issues raised by Plaintiff in this case and therefore does not render Claims 4, 5, and 6 moot or unripe.**

"Ripeness is an element of jurisdiction and is measured at the time an action is instituted; ripeness is not a moving target affected by a defendant's action." *Malama Makua v. Rumsfeld*, 136 F.Supp.2d 1155, 1161 (D. Haw. 2001). Thus, although Defendants characterize their argument as one of "ripeness," the essence of their argument is more accurately described as mootness because it pertains to events occurring after this lawsuit was filed.  *Id.*  Nonetheless, Plaintiff will address ripeness before addressing mootness.

**1.    Claims 4, 5, and 6 were ripe when this action was instituted.**

First, the Ninth Circuit has adopted the NEPA standard for ripeness for procedural ESA claims: "[the plaintiff] alleges that the Forest Service failed to comply with the procedural requirements of the ESA when it declined to reinitiate

consultation. When a party . . . suffers a procedural injury, it 'may complain of that failure at the time the failure takes place, for the claim can never get riper.'" *Cottonwood Env't L. Ctr. v. USFS*, 789 F.3d 1075, 1084 (9th Cir. 2015).  In this case, as explained below, Plaintiff confirmed that the Forest Service had not initiated/reinitiated ESA consultation for the Elkhorns, North Belts, and South Belts Travel Plans (Claims 4, 5, and 6) on January 6, 2021.  Plaintiff filed this lawsuit two days later.  Thus, these Claims were ripe when this lawsuit was filed.

In  response to Plaintiff's March 23, 2020 60-day notice of intent to sue, on May 22, 2020, the Forest Service represented:  "The Forest is initiating consultation for the Elkhorns Travel Plan" and "re-initiating consultation for the North Belts Travel Plan" and "initiating consultation for . . . the South Belts Travel Plan."  Doc. 3 ¶¶106, 122, 132.  However, the law requires that "[f]ormal consultation shall not be initiated by the Federal agency until any required biological assessment has been completed and submitted to the Director in accordance with §402.12."  50 C.F.R. §402.14 (c)(3).  No such biological assessments were provided with the Forest Service's May 22, 2020 response; thus, consultation was not initiated/reinitiated at that time. *Id.*

Almost seven months later, on December 18, 2020, Plaintiff filed a Freedom of Information Act request for the Elkhorns, South Belts, and Big Belts consultation promised by the Forest Service.  Doc. 3 ¶¶107, 123, 133.  However,

on January 6, 2021, the Forest Service informed Plaintiff that there were no responsive records for the Freedom of Information Act request; in other words, initiation/reinitiation of consultation had not occurred as of January 6, 2021.  Doc. 3 ¶¶108, 124, 134.  Thus, over nine months after Plaintiff sent the 60-day notice, the Forest Service had still not initiated/reinitiated ESA consultation on the Elkhorns, South Belts, or North Belts Travel Plans.  Doc. 3 ¶¶108, 125, 135.

This lawsuit was filed two days later – on January 8, 2021.  Doc. 1. Accordingly, on the date this lawsuit was filed, Claims 4, 5, and 6 were ripe because the Forest Service had not initiated/reinitiated ESA consultation on Elkhorns, South Belts, or North Belts Travel Plans.  *See Cottonwoood*, 789 F.3d at 1084; *see also* 50 C.F.R. §402.14 (c)(3).

Subsequently, on February 22, 2021, Plaintiff's counsel received an email from agency counsel stating that the Forest Service had reinitiated consultation on the Elkhorns and Belts Travel Plans.  Plaintiff's counsel inquired as to whether there were any biological assessments for the Travel Plans, and received in response a 15-page Biological Assessment for the Elkhorns, North Belts, and South Belts Travel Plans dated January 27, 2021.  Ex. 2.  Thus, Defendants' argument is more appropriately characterized as a mootness argument – not a ripeness argument – because the intervening events at issue occurred after the lawsuit was initiated.  *See Rumsfeld*, 136 F.Supp.2d at 1161.

2.   **Defendants fail to meet their heavy burden to establish mootness because they do not provide any legal argument regarding mootness; regardless, their new consultation does not address Plaintiff's concerns, and therefore it does not prevent the Court from providing effective relief for Claims 4, 5, and 6.**

Although Defendants argue that Claims 4, 5, and 6 should be dismissed because of events that occurred after this lawsuit was filed, they fail to provide a cognizable legal argument on mootness. The Ninth Circuit holds: "The party asserting mootness bears the burden of establishing that there is no effective relief that the court can provide. []. That burden is "heavy"; a case is not moot where any effective relief may be granted." *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)(citation omitted). "Thus, in deciding a mootness issue, the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988)(internal quotation marks & citation omitted).

In this case, the Forest Service has not yet provided Plaintiff with effective relief for Claims 4, 5, and 6. The January 27, 2021 Biological Assessment for the Elkhorns, North Belts, and South Belts Travel Plans does not address the issues raised by Claims 4, 5, and 6. Accordingly, these Claims are not moot because "a case is not moot where any effective relief may be granted." *Forest Guardians*, 450 F.3d at 461.

This Court has previously rejected a similar motion from the same agency counsel. *All. for the Wild Rockies v. Marten*, 200 F.Supp.3d 1129, 1131 (D. Mont. 2016). In *Marten*, the Forest Service requested a stay or dismissal due to a reinitiation of ESA consultation that did not provide effective relief for Plaintiff's claims. *Id.* This Court denied the motion and held:

> Reinitiation of consultation to redefine lynx critical habitat and lynx matrix habitat in the Project area *does not provide the requested relief Plaintiffs seek* in their request for summary judgment or their request for preliminary injunction.
> . . .
> The agencies' reinitiation of consultation to redefine lynx critical habitat and lynx matrix habitat within the Project likely *will not address Plaintiffs' claims*. A dispute with "present and future consequences" remains even if the USFS reinitiates consultation.
> . . .
> The USFS's promised reinitiation of consultation *does not purport to address the same issues raised by Plaintiffs*.

*Id.* (emphases added).

Similarly, in this case, the Forest Service's new consultation "does not provide the requested relief Plaintiffs seek" and therefore the motion to dismiss or stay this case should be denied. *Id.* The new consultation does not fully and fairly disclose the known, recurring illegal road use established by the Forest Service's own Law Enforcement Officer records, as set forth in Plaintiff's First Amended Complaint. Doc. 3 ¶¶23-37. Instead, in two paragraphs, the consultation dismisses illegal road use as "unknown," and therefore does not disclose known information about location and recurrence. Ex. 2 at 13, 16.

18

Similarly, the consultation does not provide any meaningful analysis on the impacts on grizzly bears from the known, recurring illegal road use established by the Forest Service's own Law Enforcement Officer records.  *See* Doc. 3 ¶¶23-37 (illegal road use); ¶¶14-22 (impacts on grizzly bears).  In particular, FWS's own Grizzly Bear Recovery Plan has long found:

> Avoidance behavior by bears of illegal vehicular traffic, foot traffic, and/or authorized use behind road closures may account for the lack of use of areas near roads by female grizzly bears in this area. This research demonstrated that a significant portion of the habitat in the study area apparently remained unused by female grizzlies for several years. Since adult females are the most important segment of the population, this lack of use of both open-roaded and closed-roaded areas is significant to the population.

Doc. 3 ¶19.

Instead of disclosing and applying this available science, in two paragraphs, the consultation dismisses impacts on grizzly bears as "uncertain" and therefore makes no attempt to analyze effects on grizzly bears from illegal roads or to analyze the questionable scientific validity of road density calculations and road density standards that continue to ignore these illegal roads.  Ex. 2 at 13, 16.

In practical effect, then, the consultation could be accurately described as a refusal to consult on the issue of concern to Plaintiff.  Accordingly, the consultation "does not provide the requested relief Plaintiffs seek," *Marten*, 200 F.Supp.3d at 1131; therefore, "effective relief may be granted" by this Court, *Forest Guardians*, 450 F.3d at 461.  Specifically, this Court can still order the

agencies to consult on the effects on grizzly bears from illegal road use in these

Travel Plan areas, using available information from Forest Service law

enforcement regarding recurring illegal road use locations, and available

information from FWS regarding impacts on grizzly bears from illegal road use.

*See* Doc. 3 ¶¶14-37.

Finally, for the reasons noted above, the agencies' argument that the Court

should stay this case until FWS issues a biological opinion for the Elkhorns, North

Belts, and South Belts Travel Plans should also be rejected.  The Biological

Assessment does not consult on the issues of concern to Plaintiff and therefore any

attendant biological opinion will suffer from the same failure.

For all of these reasons, effective relief is still available for Claims 4, 5, and

6 so the Court should deny Defendants' motion to dismiss or stay.

### III.  CONCLUSION

For all of the reasons stated above, Defendants arguments are not well-

taken.  The challenge to the Revised Forest Plan Biological Opinion – Claim 1 –

is ripe and the Court has jurisdiction over that claim under the APA.  Additionally,

the agencies refused to reinitiate consultation on the Blackfoot, Divide, and Rocky

Mountain Ranger District Travel Plans so this Court has jurisdiction over Claims

2, 3, and 7.  Finally, the Forest Service Biological Assessment for the Elkhorns,

North Belts, and South Belts Travel Plans does not provide effective relief for the

issue raised by Plaintiff; therefore, Claims 4, 5, and 6 are not moot.

As noted above, Plaintiff respectfully requests oral argument on this motion.


Respectfully submitted this 12th Day of April, 2021.

> */s/ Rebecca K. Smith*
> Rebecca K. Smith
> PUBLIC INTEREST DEFENSE CENTER, P.C.
>
> Timothy M. Bechtold
> BECHTOLD LAW FIRM, PLLC
>
> Attorneys for Plaintiffs

CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief is 5,061 words, excluding the

caption, table of authorities, table of contents, index of exhibits, signature blocks,

and certificate of compliance.

> _/s/ Rebecca K. Smith_
> Rebecca K. Smith
> PUBLIC INTEREST DEFENSE CENTER, P.C.
>
> Timothy M. Bechtold
> BECHTOLD LAW FIRM, PLLC
>
> Attorneys for Plaintiffs